UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BERNARDO FOOTWEAR, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-11-2057 |
| | § | |
| ASHLEY NETTYE, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court is Defendants Ashley Nettye, Inc. and Bernardo Fashions, LLC's (collectively "ANI") motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff Bernardo Footwear, LLC's ("Bernardo") complaint. Doc. 6. Defendants contend that Bernardo's causes of action, which arise out of the parties' competing use of the word or mark "Bernardo" on clothing and footwear, are time-barred by the applicable statutes of limitations or by laches and that the complaint fails to state a claim sufficient to satisfy the pleading requirements of Rule 8 and 9(b).

Having considered the motion, the facts of this case as alleged in Bernardo's complaint, and the applicable law, the Court finds that all of Bernardo's claims other than its claims for injunctive relief are time-barred and must be dismissed.

Background

This case arises out of the parties' contested use of the mark "BERNARDO" to sell shoes and clothing. In its original complaint, Bernardo alleges that since 1946, "Bernardo and its predecessors-in-interest . . . have been using the trademark 'BERNARDO'" to sell shoes. Doc. 1 at 2. Since that time, "the BERNARDO mark has gained notoriety and fame, and items bearing the BERNARDO mark have been worn by fashion icons, such as Jackie Onassis and Lilly

Pulitzer, in addition to numerous modern-day celebrities." *Id.* Bernardo alleges that, in order to "protect the distinctiveness of its marks," it "applied for and obtained numerous federal trademark registrations" in 1961, 1966, 1968, and 2008. *Id. See also* BERNARDO, Registration Nos. 715,133, 807,438, 841,684, 3,416,806.

In 1988, Bernardo Leather Fashions (U.S.A.), Inc. ("BLF"), a company unrelated to Bernardo, "began using the BERNARDO mark in commerce" and "submitted an application to the [United States Patent and Trademark Office ("USPTO")] to register the BERNARDO mark on 'outerwear, including jackets, coats, vests, raincoats, and windbreakers.'" *Id.* at 3. Slaughter Bros. Shoes Inc. ("Slaughter") who at that time was marketing footwear under the BERNARDO mark and owned the 1961, 1966, and 1968 trademarks, "communicated to BLF its concerns about BLF using the BERNARDO trademark and the confusion that would ensue as a result." *Id.* Those parties then "agreed to enter into a Co-Existence Agreement on April 8, 1994 in which "BLF . . . agreed to 'restrict its use of the BERNARDO mark to outwear and . . . not contest any future registration of the BERNARDO mark by Slaughter.'" *Id.* (quoting Doc. 1-2 at 1).

On August 26, 1994, the USPTO rejected BLF's application for the "BERNARDO" mark, "noting that BLF's use was confusingly similar to Slaughter's use and that it conflicted with Slaughter's federal trademark rights." Doc. 1 at 4. On February 17, 1995, "BLF filed an Office Action Response . . . with the USPTO . . . [in which it reurged] its application for trademark registration by indicating Slaughter's limited consent, under the 1994 Agreement, to allow BLF to use the BERNARDO mark on outerwear" while Slaughter would confine its use of the "BERNARDO" mark to avoid outerwear. *Id.* Bernardo does not state whether BLF obtained that trademark, but the USPTO database does indicate that ANI owns a trademark filed on April 8, 1994 and registered on June 11, 1996 for the stylized word mark "BERNARDO" used to

market outerwear. BERNARDO, Registration No. 1,979,147.

On January 23, 1996, after the parties disagreed over "the scope of the term 'outerwear' and whether that term included rainwear," Slaughter and ANI entered into a new agreement under which "Slaughter again consented, on a limited basis, to ANI's use of the BERNARDO mark on 'outerwear' in exchange for ANI's affirmative promise to restrict its use of the BERNARDO mark to outerwear and recognize Slaughter's rights to use the BERNARDO mark on all other items of clothing." *Id.* (emph. omitted).

Bernardo alleges, however, that "[s]ince 2000, . . . [and] in direct violation of the 1994 and 1996 Agreements, ANI has engaged in a calculated scheme designed to dilute and divest Bernardo of its rights to the BERNARDO marks." *Id.* at 5. According to Bernardo, ANI began filing trademark applications for marks using the word BERNARDO for goods other than outwear in 2000 and represented to the USPTO in such applications "that [it] believe[d] it [was] entitled to use [the mark] . . . [and that] no other person, firm, corporation or association has the right to use said mark in commerce." *Id.* at 5-6. Bernardo further alleges that these applications and ANI's proposed use of the BERNARDO mark are likely to cause confusion among or to deceive consumers. At the same time, ANI "pursued numerous international trademark applications" for the BERNARDO mark and misrepresented its rights to use the mark in those applications. *Id.* at 7.

Bernardo alleges that it did not gain actual notice of ANI's trademark applications until 2010, when ANI sent "aggressive and threatening communication . . . in which ANI informed Bernardo that it had filed trademark registration applications to use the BERNARDO mark on items of clothing in multiple countries," including for use on shoes and handbags. *Id.* "ANI further claimed that Bernardo did not have the right to sell shoes or handbags or other articles of

clothing bearing the BERNARDO mark to customers in these countries without first obtaining a license from ANI" and that ANI would "interfere with the sale" of Bernardo's sale of goods in such countries if it failed to obtain such a license. *Id.* After Bernardo's investigation revealed the extent of ANI's purportedly wrongful conduct, Bernardo filed this suit "to preserve its long-held trademark rights, seek rescission of the 1994 and 1996 Agreements, and avoid the inevitable confusion that will result from Defendants' indiscriminate use of the BERNARDO trademark." *Id.* at 8.

Legal Standard Under Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b) (6). In *Bell Atlantic Corp. v. Twombly,*550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish Sheriff's Office,* 530 F.3d 368, 372 (5th Cir. 2008). Under Rule 8(a)(2), plaintiffs are not required to include "'detailed factual allegations,' but more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation' is needed." *Id.* (quoting *Twombly,* 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting

*Twombly*, 550 U.S. at 556).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) is a valid means to raise a statute of limitations defense if the defense clearly appears on the face of the complaint. *Washington v. City of Gulfport, Miss.*, 351 F. App'x 916, 918 (5th Cir. 2009) (affirming district court's dismissal of plaintiff's Title VII claims as untimely under Rule 12(b)(6) for failing to file suit within 90 days of receiving right-to-sue letter); *Bush v. United States*, 823 F.2d 909, 910 (5th Cir. 1987).

Statute of Limitations Bars Bernardo's Contract Claims

The parties appear to agree that Texas law governs the 1994 and 1996 agreements.[1] In Texas, "[a] party asserting a breach of contract claim must sue no later than four years after the day the claim accrues." *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (citing TEX. CIV. PRAC. & REM.CODE § 16.051). ANI contends that the purportedly wrongful conduct alleged in Bernardo's complaint took place in 2000 and that Bernardo's complaint, filed more than ten years later, clearly is time barred. Doc. 6 at 17-18. In response, Bernardo contends that the 1994 and 1996 Agreements were "continuing contracts" for which the statute of limitations has not yet run.

The general rule in Texas is that "'[a] cause of action arising out of contractual relations between the parties accrues as soon as the contract or agreement is breached." *Dell Computer Corp. v. Rodriguez*, 390 F.3d 377, 391 (5th Cir. 2004) (quoting *Wichita Nat'l Bank v. U.S. Fidelity & Guaranty Co.*, 147 S.W.2d 295, 297 (Tex.Civ.App.-Fort Worth 1941)). "A continuing

[1] ANI states that the agreements are governed either by the laws of Texas, where Slaughter was based, or those of New York, where Ashley Nettye was based at the time of the agreement and is based now, but does not argue forcefully for the application of either state's law. Doc. 6 at 17. Bernardo did not address the applicability of New York law in its response to ANI's motion to dismiss but proceeded with an analysis of Texas' four year statute of limitations. Although the Court analyzes the case under Texas law, this case was filed approximately eleven years after the initial wrongful conduct and therefore, subject to the Court's proceeding analysis, clearly is barred under either state's laws.

contract, [however,] is an agreement where the contemplated performance and payment are divided into several parts or, where the work is continuous and indivisible, the payment for work is made in installments as the work is completed.'" *Id.* (quoting *Hubble v. Lone Star Contracting Corp.*, 883 S.W.2d 379, 381 (Tex.App.-Fort Worth 1994)). For continuing contracts, "the statute of limitations does not commence to run until the contract is terminated or fully performed." *Id.*

"In Texas, parties typically enter into continuing contracts for projects such as construction, during which performance is made in measurable increments and compensated based on the value of work completed in each period, and for which there is a clear end-point." *Id.* Although continuing contracts are not limited to construction projects, they are limited to those agreements in which the non-performance of a portion of the agreement does not detract from the ability and obligation to continue performance on the rest of the contract. *See, e.g.*, *Godde v. Wood*, 509 S.W.2d 435 (Tex.Civ.App.-Corpus Christi 1974, writ ref'd n.r.e.); "Where a claim for work, labor, or materials performed or furnished is the outgrowth of an entire contract for continuous work, labor or materials (until the work project has been completed), the claim with [sic] be treated and considered as an entire demand and limitations will not commence to run until the contract has been finished"); *Wilson v. Woolf*, 274 S.W.2d 154 (Tex.Civ.App.-Fort Worth 1955, writ ref'd n.r.e.) (a claim and satisfaction for ex-husband's overdue alimony payments did not obviate his continuing obligations to make such payments for the duration of the contract). That is not the case here. As alleged in Bernardo's complaint, the agreement between Slaughter and ANI created a single reciprocal duty on each party to abstain from expanding their business into or outside of "outerwear." The breach that Bernardo alleges is of that sole duty and occurred in 2000 when ANI applied for and began using the "BERNARDO"

mark in violation of the parties' prior agreement.[2] Because Bernardo filed this suit in 2011, long after the expiration of any applicable statute of limitations, its breach of contract claims are time-barred.

Applicable Statutes of Limitations and the Equitable Doctrine of Laches Bars Bernardo's Claims for Past Damages

"Laches is commonly defined as an inexcusable delay that results in prejudice to the defendant." *RE/MAX Intern., Inc. v. Trendsetter Realty, LLC*, 655 F.Supp.2d 679 (S.D.Tex. 2009) (citing *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 153 (5th Cir. 1985)). "The defense of laches requires proof that there was (1) a 'delay in asserting a right or claim'; (2) 'that the delay was inexcusable'; and (3) 'that undue prejudice resulted from the delay.'" *Jaso*, 435 Fed.Appx. at 357 (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998). "The time period for laches under the Lanham Act 'begins when the plaintiff knew or should have known of the infringement.'" *Id.* (citing *id.*).

"The Lanham Act does not contain a statute of limitations. As a result, federal courts refer to analogous state statutes of limitations to aid in determining what length of delay is excusable for purposes of laches." *See Jaso v. The Coca Cola Co.*, 435 Fed.Appx. 346, 357 n.11 (5th Cir. 2011); *Coastal Distributing Co., Inc. v. NGK Spark Plug*, 779 F.2d 1033 (5th Cir. 1986). Courts in Texas have found that a "'Lanham Act violation is governed by the four year statute of limitations under Texas law.'" *Mary Kay, Inc. v. Weber*, 601 F.Supp.2d at 859 (quoting *Edmark Indus. SDN. BHD. v. South Asia Int'l (H.K.) Ltd.*, 89 F.Supp.2d 840, 846 (E.D.Tex. 2000) (citing TEX. CIV. PRAC. & REM. CODE § 16.004; *Derrick Mfg. Corp. v. Southwestern Wire*

[2] At the latest, the statute of limitations began running when Bernardo knew or should have known of the breach. As the Court's following discussion of Bernardo's Lanham Act claims will show, Bernardo had constructive notice of ANI's breach, at the latest, by March 4, 2003, when the USPTO publicly registered ANI's trademark application. Because that date is more than eight years before Bernardo filed its claim, the distinction does not avail Bernardo of any greater remedy.

*Cloth, Inc.*, 934 F.Supp. 796, 805 (S.D.Tex. 1996) (applying the Texas four-year fraud limitations period to Lanham Act claims))). Because it is clear from the face of Bernardo's complaint that the purported infringements began eight to ten years ago, its claims for past damages are barred by laches. Additionally, because Bernardo's Lanham Act claims clearly fall without the state limitations periods, the Court likewise finds that Bernardo's analogous state law claims for damages are time barred.

Bernardo concedes that its claim against ANI arose in 2000 when ANI applied for "BERNARDO" trademarks for clothing items other than the outwear contemplated in the parties' original agreement and began marketing that clothing, thus resulting in a more than ten year delay before it filed suit. Bernardo claims that delay is irrelevant, however, because it only learned of ANI's breach in 2010. ANI asserts that Bernardo had constructive knowledge of ANI's potentially infringing trademarks by March 4, 2003, when USPTO officially registered ANI's "BERNARDO" mark for sportswear. Doc. 6 at 24 (citing 15 U.S.C. § 1072 ("Registration of a mark on the principal register . . . shall be constructive notice of the registrant's claim of ownership thereof.")). Finally, ANI contends that it "built up its business in reliance on what it took to be the parties' shared understanding that [Bernardo] had no interest in expanding its business to include sportswear" to the point where Bernardo's delay in asserting its trademark rights will result in undue prejudice. *Id.* at 25.

Bernardo's principal response is that ANI engaged in a "calculated scheme" and "clandestine efforts" to obtain control of the "BERNARDO" mark and that such machinations prevented Bernardo from knowing of the ongoing violations.[3] *See* Doc. 1 at 5, 8. This calculated

[3] Bernardo also states that "Defendants' unclean hands preclude Defendants from relying on the equitable doctrine of laches to defeat Bernardo's claims," but does not advance any further arguments in support of this bare contention. Because Bernardo has alleged no facts and made no claims in support of its argument, the Court finds that Bernardo has failed to state a claim that the unclean hands doctrine bars application of laches here.

scheme took the form of a "progressive encroachment" in which ANI slowly expanded its business before making a "sudden promotional expansion" of its infringing acts which compelled Bernardo to bring suit. Doc. 9 at 15 (citing *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 271 (6th Cir. 2000)). Bernardo cites cases to support its contention that laches "is inapposite . . . where the evidence makes plain a history of slow encroachment upon plaintiff's preserve, of increasingly direct competition, and of a sudden promotional expansion aimed at exploitation of a market created by plaintiff." *Id.* at 16 (quoting *Miss Universe, Inc. v. Patricelli*, 271 F. Supp. 104, 110 (D.Conn. 1967).

The Court notes that the doctrine of "progressive encroachment" has not been widely applied in the Fifth Circuit.[4] Moreover, it is not applicable to the facts of this case. Bernardo contends that ANI violated the Lanham Act by obtaining domestic and foreign trademarks from 2000 until 2010, when ANI began sending "aggressive and threatening communications" to Bernardo. Doc. 9 at 16. "After receiving these communications, Bernardo conducted an investigation of ANI's efforts to wrest control over the BERNARDO mark" and discovered the offending conduct. *Id.*

The essence of Bernardo's argument is not that ANI rapidly expanded its business after a long and slow period of slow encroachment, but that Bernardo rapidly learned of ANI's purported infringement after a long period of ignorance. As Bernardo states in its complaint, ANI applied for and received domestic trademark registrations beginning in 2000. Because these registrations were made public in the USPTO registry and were discoverable to Bernardo in the

[4] The Court found only three cases discussing the doctrine, and only one applying it. *Compare Abraham v. Alpha Chi Omega*, 781 F.Supp.2d 396 (N.D.Tex. 2011) (declining to reach the question of progressive encroachment when the court found that the defendants actually infringed) *and Westchester Media Co. L.P. v. PRL USA Holdings*, 103 F.Supp.2d 935 (S.D.Tex. 1999) (finding the doctrine inapplicable where the expansion of the purportedly infringing conduct was within the "natural zone of expansion" of the infringing party) *with Exxon Corp. v. Humble Exploration Co., Inc.*, 524 F.Supp. 450 (N.D. Tex. 1981) (doctrine of progressive encroachment applied where defendant had previously made a few minor investments in oil and gas under an infringing name before expanding and "actively engaging in . . . all facets of the [oil and gas] exploration business" under that infringing name.").

course of its duty to "police its mark,"[5] Bernardo's failure to object in a timely fashion is inexcusable. The Court therefore finds that Bernardo's claims for past damages on its Lanham Act and state law claims are time-barred

Laches Cannot Bar Bernardo's Claims for Injunctive Relief

Bernardo contends that its claims for cancellation of ANI's trademarks, for a declaratory judgment that Bernardo "is the exclusive owner of its intellectual property," and for an injunction against ANI's purported misuse of Bernardo's trademarks are not barred by laches on the grounds "the doctrine of laches does not bar the granting of injunctive relief in this case in order to prevent public confusion." Doc. 9 at 17 (citing *Am. Auto Ass'n, Inc. v. AAA Ins. Agency, Inc.*, 618 F.Supp. 787, 796 (W.D.Tex. 1985).

In 1982, the Fifth Circuit stated strongly that "[t]here is no doubt that laches may defeat claims for injunctive relief." *Armco, Inc.*, 693 F.2d at 1161 n.14. In *Armco*, the Fifth Circuit found that laches could act to bar a claim for injunctive relief under the Lanham Act and remanded to the district court to determine whether the six-year delay in that case barred the plaintiff's claims as a matter of law. Only three years after *Armco*, however, the Fifth Circuit ruled that "[a] finding of laches alone ordinarily will not bar the plaintiff's request for injunctive relief . . . because courts construe the plaintiff's unreasonable delay to imply consent to the defendant's conduct, which amounts to nothing more than a revocable license; the license is revoked once the plaintiff objects to the defendant's infringement." *Conan Properties, Inc.*, 752 F.2d at 152. "In cases where the defendant actually relies upon the plaintiff's affirmative act, however, the fiction of implied consent is inapplicable and an injunction may not issue." *Id.*

In *Conan*, one of the plaintiff's employees had offered the defendant his congratulations

[5] *See* 15 U.S.C. § 1072. *See also Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155, 1162 (5th Cir. 1982) ("The objective standard of 'knew or should have known' is a logical implementation of the duty to police one's mark.").

and good wishes for a new and potentially infringing business. *Id.* The giving of those congratulations was an "affirmative act" on which the defendant relied in expanding its business and, therefore, grounds to bar plaintiff's claims for injunctive relief. This outcome seems to turn on the alternate defense of acquiescence, however, not on a heightened "laches plus affirmative act" standard. *See id.* at 152 (". . . the jury found that Conans had proven all of the elements of the defenses of laches *and acquiescence*. The jury's affirmative finding *of acquiescence* establishes the reliance necessary to preclude the issuance of an injunction.") (emph. added).

Judge Lee Yeakel of the Western District of Texas affirmed this reading of *Conan* and attempted to clarify the application of the defenses in *Board of Regents v. KST Elec., Ltd.*, 550 F.Supp.2d 657 (W.D. Tex. 2008). In that case, Judge Yeakel rejected the defendant's contention that there existed two laches defenses: laches, requiring only a delay without excuse that causes undue prejudice to the defendant, and estoppel by laches, which required "that a defendant must further show reliance on plaintiff's acquiescence." *Id.* at 664. "Case law has been less than lucid at times in making the distinction, if any, between a laches defense and an estoppel by laches defense," Judge Yeakel explained, and "courts have conflated . . . laches—which simply means an unreasonable delay in filing suit–and estoppel by laches–where the delay in filing suit causes prejudice." *Id.* (citing 6 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 31:2 (4th ed. 2007). Nevertheless, Judge Yeakel proceeded to analyze laches and estoppel by laches as a single defense distinct from acquiescence: "a related affirmative defense in trademark cases" which the Fifth Circuit "treats . . . as a separate defense." *Id.* "In order to establish the defense of acquiescence, a defendant must prove that: (1) the plaintiff knew or should have known of the defendant's use of the trademark; (2) the plaintiff made implicit or explicit assurances to the defendant; and (3) the defendant relied on the assurances." *Id.* at 664-

65 (citing *Conan Properties*, 752 F.2d at 153).

Judge Yeakel ultimately found that there were contested issues of fact as to the length of time that the plaintiff knew of the defendant's infringing conduct and that any purported acquiescence took place *after* the plaintiff sent the defendant a "cease and desist" letter and could not, therefore, be used to calculate the time period for the plaintiff's acquiescence. *Id.* On those grounds, he granted the plaintiffs summary judgment as to the defenses of laches and acquiescence.

Other cases from this and other districts in Texas have not clarified the issue. In *Ironclad*, Judge A. Solis of the Northern District of Texas found that "[m]isconduct by the plaintiff, *such as laches* or acquiescence, may justify a court's denial of injunctive relief." *Ironclad, L.P. v. Poly-America, Inc.*, 2000 WL 1400762, *10 (N.D.Tex. 2000) (citing Restatement (Third) of Unfair Competition § 35 cmt. b; *Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 902–03 (9th Cir. 1997) (holding defendants' equitable defenses alone sufficient to justify district court's refusal to enter a permanent injunction). Judge Solis found, however, that the plaintiff's three-year delay in informing the defendant of the defendant's infringing conduct was insufficient to create the type of prejudice required for laches.

In *H.G. Shopping Centers*, Magistrate Judge Nancy K. Johnson found that "equitable defenses can defeat prospective injunctive relief," and read *Conan* to stand for the proposition that prejudice incurred before the defendant was aware of the Plaintiff's objections–in that case, prejudice incurred by expanding its infringing business within the Austin area–would support a laches defense to an injunction against *that* conduct, but not against conduct done *after* the defendant received notice of the plaintiff's objections–expanding its business into the San Antonio area. *H.G. Shopping Centers, L.P. v. Birney*, 2000 WL 33538621, *10-11 (S.D.Tex.

2000).

In *Homax Products*, Judge Keith P. Ellison rejected the reasoning in *H.G. Shopping Centers* and found that "the Fifth Circuit [in *Conan*] allowed a laches defense to the plaintiff's request for injunctive relief because one of the plaintiff's agents had 'implicitly if not explicitly' authorized the defendant to use the trademark." *Homax Products, Inc. v. Homax, Inc.*, 2009 WL 7804457, *2 (S.D.Tex. 2009).

The Court ultimately finds Judge Yeakel's analysis persuasive: in the Fifth Circuit, a defendant may plead the defense of laches, which requires the defendant to show the plaintiff's inexcusable delay in asserting its trademark rights and undue prejudice to the defendant thereby, or acquiescence, which requires the defendant to show that the plaintiff knew or should have known of the defendant's offending conduct and that the plaintiff made some implicit or explicit assurances to the defendant upon which the defendant relied. *Board of Regents*, 550 F. Supp. 2d at 664-65.

In this case, ANI has not raised the defense of acquiescence, nor does it seem applicable. Nothing on the face of Bernardo's complaint, nor alleged by ANI, indicates an explicit or implicit assurance, however slight, upon which ANI could rely. The 1994 and 1996 Agreements, in which Slaughter recognized ANI's right to continue marketing, were made before the allegedly infringing conduct beginning in 2000 and so likely cannot constitute an indication of Slaughter or Bernardo's acquiescence to that conduct. The remaining question, then, is whether laches can, in circumstances such as these, bar an injunction against trademark infringement. Because the Fifth Circuit has commanded that "[a] finding of laches alone ordinarily will not bar the plaintiff's request for injunctive relief,[6]" the Court finds that Bernardo's requests for equitable remedies are not time-barred.

[6] *Conan Properties, Inc.*, 752 F.2d at 152

Bernardo Must File an Amended Pleading Setting Forth its Right to Injunctive Relief

Because Bernardo's complaint sets forth causes of action for which it seeks both damages and injunctive relief, and because the Court has determined that Bernardo's claims for past damages must be dismissed, the Court now has before it a less-than-complete complaint from which it cannot easily determine the specific nature of Bernardo's request for relief. Similarly, in its motion to dismiss, ANI contests the validity of Bernardo's claims without distinction as to the relief sought. The Court therefore orders that Bernardo, mindful of the Court's order dismissing its claims for damages, file an amended complaint setting forth its claims for injunctive relief with particularity. ANI may, within twenty days of the filing of Bernardo's amended complaint, reurge its motion to dismiss, narrowly tailored to the nature of the relief sought.

Conclusion

The Court hereby

**ORDERS** that Defendants Ashley Nettye, Inc. and Bernardo Fashions, LLC's motion to dismiss Plaintiff Bernardo Footwear, LLC's complaint (Doc. 6) is **GRANTED** with respect to Bernardo's breach of contract claims and Bernardo's claims for past damages under the Lanham Act and state law and **DENIED** as to Bernardo's claims for injunctive relief. The Court nevertheless

**ORDERS** Bernardo to file an amended complaint within twenty days of this order setting forth its right to injunctive

SIGNED at Houston, Texas, this 28th day of March, 2012.

MELINDA HARMON
UNITED STATES DISTRICT JUDGE